**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

ANTONIO ROBINSON                                                    PETITIONER
ADC #110422

v.                                    NO. 5:14CV00343-BSM-JTR

WENDY KELLEY,[1] Director,                                      RESPONDENT
Arkansas Department of Correction

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

## **INSTRUCTIONS**

The following Proposed Findings and Recommended Disposition ("Recommendation") have been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

---

[1]Wendy Kelley became Director of the Arkansas Department of Correction on January 13, 2015, and is automatically substituted as Respondent pursuant to Fed. R. Civ. P. 25(d).

# I. Background

Pending before the Court is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus filed by Petitioner, Antonio Robinson ("Robinson"), an Arkansas Department of Correction ("ADC") prisoner. *Doc. 1*. Before addressing Robinson's habeas claims, the Court will review the procedural history of this case in state court.

On July 25, 2011, Robinson appeared in Ashley County Circuit Court and entered a negotiated guilty plea to one count of first-degree murder and one count of being a felon in possession of a firearm. He was sentenced to thirty-five years of imprisonment on each conviction, to be served concurrently. *Doc. 7-2, at 7-9*. Because his guilty plea was not conditional, Robinson waived his right to a direct appeal. *See* Ark. R. App. P.-Crim 1(a); Ark. R. Crim. P. 24.3(b) (2011).

On September 12, 2011, Robinson filed a timely *pro se* petition for post-conviction relief under Ark. R. Crim. P. 37, raising several claims that his trial counsel was ineffective.[2] On September 13, 2012, the trial court dismissed the Rule 37 petition

---

[2] In his Rule 37 petition, Robinson argued that his trial attorney was ineffective for: (1) advising Robinson that it would be in his best interest to accept a plea bargain because he would not receive a fair trial; (2) refusing to allow Robinson to listen to any witness recordings or statements; (3) having no "attorney/client relationship"; (4) refusing to ask for a change of venue; (5) refusing to give Robinson a copy of a motion for discovery; (6) refusing to argue that the police denied him due process and would not apprehend individuals who fired shots and tried to kill Robinson; (7) advising him to confess to first-degree murder because the firearm sentence would run concurrent; (8) telling him that the prosecutor would not allow him to have a fair trial or subpoena certain witnesses; and (9) refusing to raise a self-defense argument. *Doc. 7-2, at 14-21*. On April 10, 2012, Robinson filed an amendment to his petition, arguing that his attorney was ineffective for advising him to reject a 20-year plea offer on a reduced charge of second-

on the ground that it was without merit. *Doc. 7-2, at 25-30*.

Robinson appealed the trial court's denial of Rule 37 relief to the Arkansas Supreme Court. While that appeal was pending, he filed a "Pro se Petition to Amend Information and Stay of Proceedings" with the Arkansas Supreme Court. *Doc. 7-5*. On June 19, 2014, the Court denied the Petition to Amend and dismissed Robinson's appeal of the trial court's denial of Rule 37 relief. The Court held that it was "clear from the face of the record that appellant could not prevail on appeal even if the petition [to amend] were granted." *Robinson v. State*, 2014 Ark. 289 at 2 (per curiam).

On September 4, 2014, the Arkansas Supreme Court entered a "Formal Order" summarily denying Robinson's *pro se* motion for reconsideration. *Docs. 7-7, 7-8*.

On September 12, 2014, Robinson initiated this habeas action in which he argues that his federal constitutional rights were violated because:

(1)    His counsel was ineffective in connection with plea bargaining and entry of his guilty plea;

(2)    He was denied counsel and a hearing in his state post-conviction proceedings; and

(3)    He was denied due process based on the prosecutor's comments about parole eligibility during his plea hearing.

_____

degree murder. He asserted that, although his attorney said he "could get [Robinson] less" and he "would not receive the Habitual Offenders Act," Robinson ultimately received a 35-year sentence for first-degree murder, plus an "enhancement" of 35 additional years on the felon-in-possession charge. *Id. at 22-23*.

-3-

*Docs. 1 & 9.*

Respondent argues that Robinson's claims are either procedurally defaulted or fail on the merits. *Doc. 7.*

For the reasons explained below, the Court recommends that all of Robinson's habeas claims be dismissed, with prejudice.

## II. Discussion

### A. <u>Ineffective Assistance of Counsel Claims</u>

Robinson alleges that, in January 2011, his attorney visited him in jail and told him the prosecutor had offered a "twenty-year plea deal" to a reduced charge of second-degree murder. Robinson alleges that he "agreed to accept" the offer. His attorney "left and said he would be back with the paperwork," but he did not return for five months. Robinson alleges that he wrote two letters to his attorney, reiterating that he wanted to accept the twenty-year offer.

According to Robinson, the next time he saw his attorney, the attorney apologized and said he had been in the hospital. The attorney said the twenty-year deal "was no longer available," but the prosecutor was now offering thirty-five years on first degree murder "under the 70%."[3] Robinson alleges his attorney told him that, if

---

[3]Under Arkansas's so-called "70% rule," a person convicted of certain offenses, including first-degree murder, must serve 70% of his term of imprisonment before becoming

Robinson chose to go to trial, rather than take the thirty-five year deal, he would get a life sentence.

Robinson argues that he would not have pleaded guilty or accepted the thirty-five-year plea offer if counsel had not abandoned him in the midst of the earlier plea negotiations. He argues that, because his attorney "failed to secure the twenty-year deal," he lost the opportunity to receive a far more lenient sentence. Thus, he requests this Court to order "specific performance of the first 20 year offer on 2nd degree murder." *Doc. 1, at 5, 14,16-17; Doc. 9, at 1-2.*

1.      **Alleged "Ineffectiveness" of Robinson's Lawyer in Plea Negotiations Regarding Twenty-Year Offer**

Respondent correctly argues that Robinson's ineffective-assistance-of-counsel claim regarding the twenty-year plea offer is procedurally defaulted because it is *not* the same claim Robinson made in his Rule 37 post-conviction proceedings. *See Murphy v. King*, 652 F.3d 845, 848-50 (8th Cir. 2011) (before seeking federal habeas relief, petitioner must "fairly present" his claim to the state courts; federal habeas review of defaulted claims is "barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage

---

eligible for parole. *See* Ark. Code Ann. § 16-93-611(a)(1) (2009), *repealed and replaced by* Ark. Code Ann. § 16-93-618 (2011).

-5-

of justice") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).[4] Robinson argued in his Rule 37 proceedings that he "*turned down*" a twenty-year offer because counsel said he "could get [Robinson] less." *Doc. 7-2, at 22*. This proved not to be the case as the next plea offer was for thirty-five years. In contrast, Robinson now argues that he "*agreed to accept*" the twenty-year offer but his attorney "abandoned" him and ignored Robinson's repeated requests to accept the offer. *Doc. 1, at 16*.

Robinson contends that his procedural default is excused under the "*Martinez* exception." *Doc. 9, at 2*. In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Court recognized that, in a narrow range of habeas cases, a petitioner can rely on his lack of counsel or ineffective assistance of counsel, which occurred at *the initial step of post-conviction review*, to establish "cause" to excuse his procedural default of an ineffective-assistance-of-counsel claim. The Eighth Circuit has made it clear that, in § 2254 habeas claims arising in Arkansas, the

---

[4]Although Robinson concedes that he "purposefully kill[ed] the victim" and "might" be guilty of manslaughter, he argues that he is "actually innocent" of first degree murder due to his "emotional duress" and "reduced intent" at the time of the killing. According to Robinson, he was being "chased and shot at during the incident." *Doc. 1, at 19-20; Doc. 9, at 3*. This conclusory allegation falls far short of the high evidentiary standard required by the United States Supreme Court to meet the demanding "fundamental miscarriage of justice" or "actual innocence" exception to the cause-prejudice requirement. *See Schlup v. Delo*, 513 U.S. 298, 324-31 (1995) (exception requires habeas petitioner to come forward with new reliable evidence not presented at trial and to show, in light of the new evidence, "that it is more likely than not that 'no reasonable juror' would have convicted him"); *Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency."); *Pitts v. Lockhart*, 85 F.3d 348, 350 (8th Cir. 1996). Thus, the limited exception is inapplicable.

*Martinez* exception only allows a district court to "to find 'cause,' thereby excusing a habeas petitioner's procedural default ... where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014), *petition for cert. filed*, No. 14-8782 (U.S. Mar. 10, 2015) .

Robinson has satisfied the second and third elements of *Dansby* because he lacked counsel during his state post-conviction proceeding, and it was the "initial" proceeding in which he could have raised his ineffective assistance of counsel claim. However, to invoke the *Martinez* exception, Robinson must also satisfy the first element of *Dansby*, which requires him to establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one."[5] *Martinez*, 132 S. Ct. at 1318; *Dansby*, 766 F.3d at 834.

For Robinson to show that there is "some merit" to his claim that counsel was

---

[5]According to the Court in *Martinez*, for an ineffective-assistance-of-counsel claim to be "substantial," the habeas petitioner must demonstrate that his claim: (1) has "some merit"; and (2) is supported by at least some facts. *Martinez*, 132 S. Ct. at 1318-19. If a habeas petitioner is unable to satisfy either part of this "substantiality test," his ineffective-assistance-of-counsel claim is procedurally defaulted and cannot be considered by a federal court in a § 2254 habeas action.

ineffective in connection with the twenty-year plea offer, he must establish that: (1) his attorney's alleged conduct "fell below an objective standard of reasonableness ... under prevailing professional norms"; *and* (2) the "professionally unreasonable" conduct of counsel "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88, 691-92 (1984). To show prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, Robinson must demonstrate a reasonable probability that: (1) he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel" during plea negotiations; (2) the plea "would have been entered without the prosecution canceling it or the trial court refusing to accept it"; and (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).[6] If the *Strickland/Frye* standard is not met, as a matter of law, Robinson's ineffective-assistance-of-counsel claim is without merit and cannot be deemed "substantial" under *Martinez*.

The Court concludes that, under *Martinez*, Robinson has not established a

---

[6]According to Robinson, the governing precedent is *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), which he asserts is "virtually identical" to his case. In *Lafler*, the parties agreed that counsel's performance was deficient in advising a defendant to reject a plea offer, and the only question to be determined was "how to apply *Strickland*'s prejudice test" where ineffective assistance results in rejection of a plea offer and the defendant is convicted *at an ensuing jury trial*. *Id.* at 1384. In Robinson's case, deficient performance is *not* conceded and, as discussed, Robinson was convicted after *pleading guilty* to a sentence harsher than that offered in the earlier plea negotiations. Thus, *Lafler* is of little help in analyzing either the "performance" or "prejudice" aspect of *Strickland* in this case.

"substantial" ineffective-assistance-of-counsel claim arising from his attorney's alleged conduct in handling the twenty-year plea offer.

First, the record refutes Robinson's current allegation that, in January 2011, he "agreed to accept" the twenty-year offer. In a sworn document in his state Rule 37 proceedings, Robinson stated that, during the January meeting with his attorney in the Ashley County jail, he initially told his attorney he wanted to accept the offer but then "turned down the offer" when his attorney said he "could get [Robinson] less." *Doc. 1, at 45*. These facts are directly supported by two letters Robinson wrote to his attorney in February 2011. In the first letter, dated February 2, 2011, Robinson stated: "I've thought a lot about what you told me during our first visit at the jail in Hamburg. *You told me to consider tak[ing] 20 years on second degree murder.* I am looking out for me and my children['s] best interest, so Mr. McLean yes I will take the 20 years on the second degree. Is that still an option." *Id. at 50* (emphasis added). On February 15, 2011, Robinson wrote another letter to his attorney, stating: "The first time that we met, at the jail, *you told me I should consider taking 20 years on the second degree*. Well I've considered that, is that still an option. Yes I will take that. I am not trying to go to trial." *Id. at 51* (emphasis added). Both these letters make it clear that, during the January 2011 meeting with his attorney, Robinson did *not* accept the twenty-year plea offer.

Thus, Robinson's own evidence shows that: (1) his attorney advised him, in January 2011, *to consider accepting* the twenty-year offer, even though the attorney thought further negotiations could produce a better offer;[7] (2) Robinson *turned down* the twenty-year offer in January 2011; and (3) several weeks later, Robinson belatedly decided to accept the offer if it was "still an option," recognizing that it might no longer be available. Accordingly, none of the facts in the record support his current habeas argument.

Second, Robinson's habeas allegations that his attorney was incompetent in plea negotiations are contrary to: (1) the Plea Statement Robinson signed on July 25, 2011; and (2) his sworn testimony the same day at his plea hearing.[8] In his Plea Statement, Robinson answered "Yes" to the question: "Have you discussed your case fully with your attorney and are you satisfied with his or her services?" *Doc. 7-2, at 11.* Similarly, at the plea hearing, Robinson told the court, *under oath*, that he had no complaints about his attorney, stating, "No, sir, he's great." *Id. at 33.* He said nothing about his attorney "abandoning" him and causing him to miss out on a twenty-year

---

[7]The January 2011 meeting between Robinson and his attorney in the Ashley County jail was their first substantive meeting. It appears that his attorney was appointed in late December 2010 or early January 2011, after Robinson "fire[d]" the attorney who had previously represented him. *See Doc. 1, at 47-48.*

[8]A defendant's "representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.3d 1306, 1308 (8th Cir. 1985)).

plea offer. When asked if there was "any reason" why the court should not accept his guilty pleas, Robinson replied: "No, sir." *Id. at 34-35*. Robinson also told the court that, other than the state's thirty-five year recommendation in the July 2011 plea bargain, no one had "promised [him] anything ... in exchange for [his] plea." *Id. at 41*.

Based on this record, Robinson has not established that his trial counsel's performance was constitutionally deficient in connection with the plea negotiations surrounding the initial twenty-year offer. A court considering a claim of ineffective assistance "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Supreme Court has emphasized that "strict adherence" to *Strickland*'s deferential standard is "all the more essential when reviewing the choices an attorney made at the plea bargain stage":

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. ...
>
> ....
>
> ...The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of

past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial, In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.

....

In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take. It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived. The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.

*Premo v. Moore*, 562 U.S. 115, 125-26 (2011).

Under this deferential standard of review, Robinson has not overcome *Strickland*'s "strong presumption" that his attorney's conduct was "within the 'wide range' of reasonable professional assistance" in connection with the twenty-year plea offer.

Finally, even if counsel's performance is deemed "objectively unreasonable," Robinson has not established prejudice under *Strickland/Frye*, *i.e.*, he has not demonstrated a reasonable probability that, if counsel had contacted the prosecutor, after receiving Robinson's letters in February 2011, the plea "would have been entered without the prosecution canceling it or the trial court refusing to accept it." Robinson

himself recognized that, by belatedly attempting to accept the offer, it might not still be an option. The record also shows that, after Robinson rejected the initial twenty-year offer in January 2011, the prosecutor amended the charging information to include a statutory enhancement for Robinson's alleged use of a firearm in commission of a felony. *See Doc. 7-2, at 3 (07/08/2010 Information), 5 (03/14/2011 Amended Information)*; Ark. Code Ann. § 16-90-120. The statutory enhancement provides for an additional fifteen-year term of imprisonment, to be served consecutively to the sentence for the underlying felony. Because the prosecutor later determined that a fifteen-year firearm enhancement was warranted, Robinson has not established that the prosecutor would have been willing to re-extend the twenty-year offer after Robinson had already turned it down.

Robinson's ineffective-assistance-of-counsel claim, based on the way his lawyer handled the twenty-year plea offer, is without merit under *Strickland*/*Frye*. Thus, it cannot be considered to be a "substantial" claim that excuses Robinson's procedural default under the *Martinez* exception. Accordingly, Robinson has procedurally defaulted this ineffective-assistance-of-counsel claim, and the Court is barred from further considering its merits.

**2.    Alleged "Ineffectiveness" of Robinson's Lawyer in Robinson's Entry of His Guilty Plea**

Robinson also appears to be arguing that his negotiated guilty plea, in July

-13-

2011, was involuntary due to his attorney's ineffective representation.[9] In denying the

Rule 37 petition, the trial court rejected this claim and expressly found that Robinson

"voluntarily and intelligently entered his plea during the colloquy between defendant

and the Court." *Doc. 7-2, at 29*. The court went on to state:

> Based upon [Robinson's] responses to questions during his plea after having been duly sworn, his familiarity with the Court system, his education, his unequivocal admission of guilty [sic], his acknowledgment of a possible penalty of life plus forty years, the Court gives greater credibility to his testimony during his plea than the contents of his petition and amended petition under Rule 37.

*Id. at 30*.

Similarly, in affirming the trial court's denial of Rule 37 relief, the Arkansas

Supreme Court noted the trial court's finding that Robinson "had entered the plea

voluntarily and intelligently," and further stated:

> The circuit court's findings are correctly reflected in the record. The record also reflects that appellant denied any coercion in entering the plea and stated that he believed that the State could meet its burden of proof on both charges if the case proceeded to trial, including the habitual-offender enhancement. After the court announced appellant's sentence as 420 months' imprisonment for each charge to run

---

[9]Where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Accordingly, to establish ineffective assistance of counsel in connection with entry of a guilty plea, a defendant must show: (1) that counsel's representation "fell below an objective standard of reasonable-ness," as set forth in *Strickland*; and (2) a "reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

concurrently, appellant stated that the sentence as entered reflected his understanding of the plea and that no other promises had been made to him.

Because the allegations raised by appellant in the [Rule 37] petition and the amended petition were conclusory and failed to establish any correlation between the alleged ineffectiveness of counsel and appellant's decision to enter the plea, appellant failed to meet his burden of proving prejudice from any deficient performance on the part of trial counsel.

*Robinson*, *supra* at 4-5.

The transcript of the plea colloquy supports the decisions of the trial court and the Arkansas Supreme Court. The transcript shows that the trial court informed Robinson of the charges against him and the range of sentences he faced. The court specifically informed him that, due to his status as an habitual offender, he faced potential life imprisonment on the first-degree murder charge, and a potential forty-year term on the felon-in-possession charge. *Doc. 7-2, at 32*. Robinson stated that he understood the charges and the possible penalties, and that he had discussed them with his attorney. *Id. at 33-34*. He said he had no questions and no complaints about his attorney. *Id. at 33*. He answered "no" when asked whether "anyone promised you anything or in any way forced you or threatened you in order to get you to enter these pleas of guilty." *Id. at 34*.

Robinson said he had obtained his GED, had no problem reading or understanding the plea statement, and was not under the influence of any substances.

*Id.* He and his attorney both said there was no reason for the trial court to not accept the plea. *Id. at 34-35*.

The prosecutor then stated the factual basis for the first degree murder and felon-in-possession charges.[10] *Id. at 35-36*. Robinson answered "yes, sir" to the trial court's questions asking if he committed the offenses as stated by the prosecutor; if he felt like the state could prove him guilty of the charges; and if he was "pleading guilty because [he was] guilty" to both charges. *Id. at 37-39*. Robinson also admitted that he was an habitual offender with four or more prior felonies. *Id. at 39-40*.

Finally, Robinson affirmed that he agreed to the prosecutor's stated sentencing recommendation ("[t]hirty-five years on each count to run concurrent"). *Id. at 40-41*. He answered "no, sir" when asked if anyone had promised him "anything as to any early release, parole, good time, anything of that nature in exchange for the plea other than what is contained in the recommendation." *Id. at 41*.

Robinson has come forward with no clear and convincing evidence to rebut the presumptively correct factual findings made by the state courts. *See* 28 U.S.C. § 2254(e)(1). Moreover, the state courts' decisions, holding that Robinson's plea was

---

[10]Regarding the first-degree murder charge, the prosecutor stated: "[T]he Defendant shot Demontrius Webb somewhere underneath the eye causing his death. He fled from the scene. I believe he was caught fleeing from the scene. He was read his *Miranda* rights. They asked him where the firearm was and he told them where he had hid it under a bucket near where the shooting, not far from where the shooting took place." *Id. at 35-36*. For the felon-in-possession charge, the prosecutor recounted Robinson's multiple prior felonies. *Id. at 36-37*.

voluntarily entered, were not contrary to, or an unreasonable application of, federal law, nor were the decisions based on an unreasonable determination of the facts. *Id.* § 2254(d).

Accordingly, the Court recommends that Robinson's claim his attorney was ineffective, in connection with entry of his guilty plea, be denied because it is without merit.

## B.     **Robinson's Claim That He Was Denied Both an Attorney and a Hearing in Rule 37 Proceedings**

Robinson argues that, during his Rule 37 proceedings, he was not provided an attorney, a hearing, or "meaningful review" of his ineffective-assistance claims. He asserts that, under *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), defendants who have pleaded guilty have a right to post-conviction counsel to challenge that plea. *Doc. 1, at 6-7, 17-20; Doc. 9, at 2-3.*

Because the Constitution does not guarantee the existence of state post-conviction proceedings, *see Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987), infirmities in such proceeding do not raise constitutional issues cognizable in a federal habeas application. *Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007); *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir.1990); *Smith v. Lockhart*, 882 F.2d 331, 334 (8th Cir.1989) (no constitutional right to an evidentiary hearing during state post-conviction proceedings).

-17-

Moreover, *Lafler* concerned the right to effective assistance of counsel in the *plea-bargaining process* and in no way supports Robinson's argument that he had a constitutional right to counsel in his *state post-conviction proceedings*. Finally, the Supreme Court has expressly declined to hold that there is a constitutional right to counsel in a state post-conviction proceeding. *Martinez*, 132 S. Ct. at 1315, 1319-20.

Accordingly, Robinson's second habeas claim is without merit.

## C. Due Process Claims Based on Prosecutor's Communication About Parole Eligibility

Finally, Robinson argues that he was denied due process because: (1) the prosecutor "engaged directly" in plea negotiations with him during the July 2011 plea hearing; (2) the prosecutor's communication consisted of "false and misleading" statements that Robinson's four prior convictions had no effect on his parole eligibility; (3) the prosecutor's communication influenced his decision to plead guilty; (4) the trial court failed to intervene to correct the "egregious" comments; and (5) his trial attorney did not object to the prosecutor's comments or the trial court's failure to intervene. *Doc. 1, at 8, 20-21; Doc. 9, at 3.*

Respondent correctly argues that Robinson procedurally defaulted this claim because he never raised it in state court. To excuse his default, Robinson blames: (1)

-18-

his counsel for failing to object at trial and raise the issue on direct appeal;[11] and (2) his *pro se* status in his post-conviction proceedings.

The *Martinez* exception is limited to Robinson's procedurally defaulted claim that his trial counsel was ineffective and does not extend to his other defaulted claims of prosecutorial misconduct and trial court error. *See Dansby*, 766 F.3d at 833-34. However, in this case, determining whether trial counsel was ineffective, for failing to object to the prosecutor's comments and the trial court's failure to intervene, necessarily involves an analysis of the underlying conduct.

As previously discussed, the transcript of the plea colloquy establishes that the trial court informed Robinson of the charges against him and the range of sentences he faced as a habitual offender. *Doc. 7-2, at 32*. Robinson stated that he understood the charges and the possible penalties, and that he had discussed them with his attorney. *Id. at 33-34*. Robinson affirmed that the prosecutor's stated thirty-five year sentencing recommendation was as he had agreed. *Id. at 40-41*. He affirmed that no one had promised him "anything as to any early release, parole, goodtime, anything of that nature in exchange for the plea other than what is contained in the recommendation." *Id. at 41*. Robinson entered his guilty pleas, and the trial court sentenced him to two concurrent terms of thirty-five years. *Id. at 37-41*.

---

[11]As will be explained, this ineffective-assistance-of-counsel claim is not "substantial." Thus, Robinson's default is not excused under the *Martinez* exception.

Robinson then asked how his four or more prior convictions affected his

sentence. The prosecutor stated:

> It doesn't affect anything. Under the old law, under the parole
> eligibility [law] ten years ago it would make a difference. All it does is
> enhance the possible sentencing range you can receive today.

> For example, without that the sentencing range is ---

> The question was is what – Does the habitual offender sentencing
> have any effect on this at this point in time? And what it does is it affects
> the possible sentence that he could receive, which is from ten years to
> life. The difference would be, without the habitual offender sentencing,
> it could be from ten to forty or life. But it does not –

> Used to be in Arkansas it would affect parole eligibility, but that
> is not the law any more is my understanding.

*Id. at 42-43.*

After the prosecutor's comments, the trial court asked Robinson if he

understood, and he said that he did. *Id. at 43*. The court then addressed Robinson:

> THE COURT: First, of all, I want you to understand this: nothing this
> Court says or nothing your counsel says can affect what they do at the
> Department of Corrections.

> THE DEFENDANT: Exactly.

> THE COURT: Counsel have explained to you what they think it is, but
> that's not binding on the Department of Corrections. Do you understand
> this?

> [PROSECUTOR]: Defense counsel and myself both had that
> conversation with him. We don't control, all we can tell them is what the
> law is.

THE COURT: You understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: You have another question, sir?

THE DEFENDANT: Yeah, I got question for you. So the deal I'm taking today is thirty-five years on a seventy percent, right?

[DEFENSE COUNSEL]: Uh-huh.

THE DEFENDANT: Okay. Okay.

[PROSECUTOR]: Right. That's what we talked about.

THE COURT: Anything further – I take it the way it was done it was something between counsel and defendant. I don't know if this Court has any – I mean between counsel and defendant. And I don't know if this Court has any business looking at it, do I?

[PROSECUTOR]: He wanted to make it clear that the parole eligibility for first degree murder is a seventy percent statute.

[DEFENSE COUNSEL]: We both agree to that. I think the Court would agree to that, too.

THE COURT: Right. That's our understanding. But again, no one can promise you anything about parole, good time, anything of that nature.

THE DEFENDANT: I understand that.

*Id. at 43-44.*

Based on this record, the Court concludes that Robinson's attorney was not constitutionally ineffective for failing to object to the conduct of the prosecutor or the trial court. First, the prosecutor's response to Robinson's question did not constitute

"direct" plea negotiations with Robinson, as the comments were made in open court, in the presence of Robinson's counsel.[12] Thus, counsel was not ineffective for failing to object on the ground the prosecutor was engaging in "direct" plea negotiations with Robinson.

Second, regardless of whether the prosecutor correctly stated the law in responding to Robinson's question, the statements cannot be said to have had any effect on Robinson's decision to plead guilty, because all of these statements were made by the prosecutor *after* Robinson had pleaded guilty to each of the charges and the trial court had imposed his sentence. Robinson expressly stated that no one had promised him anything "as to any early release, parole, goodtime, anything of that nature." *Id. at 41*. Furthermore, the trial court made it clear that, regardless of the prosecutor's recommendations, Robinson's attorney's advice, or the sentence imposed by the court, the matter of parole eligibility would be determined by the ADC. *Id. at 43-44*. Thus, the prosecutor's in-court statements cannot be said to have influenced Robinson's decision to plead guilty, and counsel was not ineffective for failing to object to the comments on that basis.

Third, Robinson provides no ADC documentation or statutory authority to establish that the prosecutor falsely stated that Robinson's prior felony convictions

---

[12]The case cited by Robinson, *State v. Lopez*, 497 A.2d 390 (Conn. 1985), is not applicable, as it concerns state procedural rules in Connecticut.

had no effect on his parole eligibility. According to Robinson, because he had four or more prior convictions, he is not eligible for parole consideration until after he has served seventy-five percent, or twenty-seven years, of his thirty-five-year sentence. *Doc. 1, at 20*. However, Respondent has submitted an ADC "New Release Date Calculation" sheet showing that Robinson is serving a "70% Sent[ence]," which requires him to serve 8948 days (24.5 years) of his thirty-five-year sentence before becoming eligible for parole/transfer consideration. *Doc. 7-9*.

The ADC calculation sheet also shows that Robinson is subject to "Act 1326." Under Act 1326 of 1995, as codified in Ark. Code Ann. § 16-93-611, any prisoner convicted of certain offenses, including first-degree murder, is not eligible for parole until he has served seventy percent of his sentence. *See* 1995 Ark. Acts 1326 § 2 & notes to Ark. Code Ann. § 16-93-611. Thus, under this statute, the seventy-percent parole-eligibility restriction is based on Robinson's commission of first-degree murder, *not* on his four or more prior felony convictions.

Finally, the record reflects that, prior to the plea hearing, Robinson had discussions with his attorney about the applicability of the seventy-percent rule to his sentence, and that all parties – including the trial court – agreed it was applicable. Although the trial court warned Robinson that any agreement or understanding about parole eligibility was "not binding on the Department of Correction," the ADC records

-23-

establish that Robinson's parole eligibility is, in fact, being determined under the seventy-percent rule.

Thus, Robinson has not established that his attorney was ineffective in failing to object to the prosecutor's parole eligibility comments or the trial court's failure to intervene.

Because this ineffective-assistance claim has no merit under *Strickland*, it is not a "substantial" claim that excuses Robinson's procedural default under the *Martinez* exception. He has provided no other basis for excusing the default of this ineffective-assistance claim, or his claims of prosecutorial misconduct and trial court error. Accordingly, this Court is barred from considering the merits of those claims.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 1*, be DENIED, and that this case be DISMISSED in its entirety, with prejudice. Robinson's "Motion for Declaratory Judgment," *Doc. 10*, should be DENIED as moot.

IT IS FURTHER RECOMMENDED that a Certificate of Appealability be DENIED, as Robinson has not made a substantial showing of the denial of a

constitutional right.[13]

DATED THIS 3rd DAY OF August, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

[13]*See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.